UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHLEEN and TIMOTHY BACKUS,

                    Plaintiffs,

      v.

GENTLE DENTISTRY OF EAST
  AURORA, PLLC et al.,

                  Defendants.

**REPORT AND
RECOMMENDATION**

13-CV-716A

## I.    INTRODUCTION

The Hon. Richard J. Arcara referred this case to this Court under 28 U.S.C.

§ 636(b).  Pending before the Court is a motion (Dkt. No. 7) by

defendants—Gentle Dentistry of East Aurora, PLLC ("Gentle Dentistry"), Dr.

Leslie Ann Glassbrenner ("Glassbrenner"), General Electric Co., GE Capital, and

CareCredit—to dismiss plaintiffs' complaint under Rule 12(b)(6) of the Federal

Rules of Civil Procedure ("FRCP").  Defendants removed this case from New

York State Supreme Court, Erie County, by filing a notice of removal on July 10,

2013.  (Dkt. No. 1.)  Although the complaint does not specify any statutes under

which the causes of action arise, defendants assert that the limitations periods

have run for the state and federal statutes that match plaintiffs' allegations most

closely.  Defendants argue further that plaintiffs' fraud allegations lacked the

particularity required under Rule 9(b) of the FRCP.  Finally, defendants argue that New York does not recognize a separate cause of action for conspiracy to commit fraud and that plaintiffs have not alleged any conduct by defendant Glassbrenner.

Upon referral of the case and the pending motion, the Court issued a schedule (Dkt. No. 9) that required responding papers from plaintiffs by January 17, 2014, required reply papers from defendants by January 31, 2014, and set oral argument for February 6, 2014.  Plaintiffs received electronic notice of that schedule through their law firm of record.  The deadline for responding papers came and went without any filing from plaintiffs.  Accordingly, on January 29, 2014 the Court canceled oral argument and deemed the motion submitted.  (Dkt. No. 10.)  Through the time of this writing, the Court has not received any communication from the parties through filings on the docket or informally through contact with chambers.

Although the lack of opposition to the motion may be relevant in some respects, it does not mean automatic granting of the motion.  First, as explained below, the Court became concerned with subject-matter jurisdiction and turned to that issue *sua sponte* before considering the motion to dismiss.  Second, inquiries about subject-matter jurisdiction and motions to dismiss both are dispositive in nature, and the Court had to consider the underlying merits anyway.  *See Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008) (finding a motion to

2

remand dispositive and "indistinguishable from a motion to dismiss the action from federal court based on a lack of subject matter jurisdiction for the purpose of [28 U.S.C.] § 636(b)(1)(A)"); *cf. McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000) (requiring a Rule 12(b)(6) motion to be assessed on the merits even if unopposed); *see also Archilla v. Davila*, No. EP-07-CA-0038-FM, 2007 WL 1876537, at *1 n.1 (W.D. Tex. June 26, 2007) ("Although Plaintiff has not responded to Defendant's Motion, the Court will consider the Motion on its merits under Federal Rule of Civil Procedure 12(b)(1) rather than automatically granting the Motion as unopposed.") (citations omitted).  Now having considered the merits, the Court respectfully recommends remanding the case to state court *sua sponte* for lack of subject-matter jurisdiction.  The Court further recommends denying the pending motion to dismiss without prejudice to pursue in state court.

## II.    BACKGROUND

Because plaintiffs never responded to the pending motion, the Court has only the notice of removal, the complaint, and the initial motion papers to examine.  Nonetheless, the Court infers from the complaint that this case concerns two dental patients who believe that defendants fraudulently oversold dental services to them and led them to incur unnecessary debt for those services.  Plaintiffs are residents of West Seneca, New York and, for at least some period of time, were patients of Gentle Dentistry and Glassbrenner specifically.  According to the complaint, plaintiffs visited Gentle Dentistry on May

8, 2009.  Glassbrenner apparently tended to both plaintiffs that day.  Whatever

services or diagnoses Glassbrenner rendered, she told plaintiffs that they needed

unspecified further dental care and that Gentle Dentistry could provide it.

Plaintiffs appear to have attached to the original complaint an Exhibit A that

itemized the proposed services, though defendants did not include that list in their

removal papers.  The Court has little information about what happened between

plaintiffs and defendants after May 8, 2009.  Paragraph 11 of the complaint

implies that plaintiffs went through with whatever services Glassbrenner and

Gentle Dentistry prescribed.  Several paragraphs of the complaint indicate that

plaintiffs could not afford the services prescribed and obtained financing through

defendants General Electric Co., GE Capital, and CareCredit.

Whatever else may have happened between plaintiffs and defendants after

May 8, 2009 appears not to have worked out well.  Plaintiffs eventually filed a

verified complaint in state court on June 4, 2013.  The complaint contains three

causes of action.  In the first cause of action, plaintiffs accuse defendants of

fraudulently inducing plaintiffs both to undergo unnecessary dental care and to

apply for debt financing "in amounts exceeding their actual dental needs."  (Dkt.

No. 1 at 10.)  In the second cause of action, partially titled "predatory lending and

fraud," plaintiffs accuse defendants of causing them damages by intentionally

misleading them on the terms of the financing for which they applied including

"misrepresented loans, terms, hidden costs and inflated interest notes of

4

repayment . . . , all in violation of Federal and New York State Lending and Disclosure Laws . . . ." (*Id.* at 11.)  In the third cause of action, partially titled "conspiracy," plaintiffs allege that defendants "individually and jointly conspired to wrongfully induce Plaintiffs and members of the public to secure unnecessary, misrepresented loans from Defendants, individually and jointly . . . . [and] . . . engaged in a wrongful enterprise for financial gain, all in violation of New York State and Federal Laws for their individual and joint monetary benefit." (*Id.*) Notably, the above two quotations from the complaint mark the only two appearances of the word "federal" in the entire document.  Nowhere do plaintiffs specify any federal or state statutes that defendants allegedly violated.  Plaintiffs served their complaint on defendants on June 10, 2013.

Defendants removed the case to federal court on July 10, 2013 and filed the pending motion on August 9, 2013.  In their motion papers, defendants advance several arguments in favor of dismissal.  Defendants speculate that the federal lending laws referenced in the complaint might be the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f, and then note that the one-year limitations period for TILA claims likely has passed.  Defendants similarly speculate that plaintiffs may have been referring to New York General Business Law § 349 and then note that the three-year limitations period for that statute likely has passed also.[1]  Additionally, defendants argue that plaintiffs' accusations

---

[1] Defendants rely on May 8, 2009—the date of the initial diagnosis and recommendation of services—as the time when plaintiffs' claims under either

of fraud are vague and come nowhere near the particularity required under Rule 9(b). Defendants argue for dismissal of the cause of action for conspiracy because New York does not recognize a cause of action for conspiracy to commit fraud. Finally, defendants assert that the Court should dismiss Glassbrenner in her personal capacity because the complaint does not allege any conduct on her part, outside of her role with Gentle Dentistry.

As mentioned above, plaintiffs never responded to the pending motion despite receiving notice of the Court's schedule for doing so.

## III.   DISCUSSION

Although defendants have submitted a motion to dismiss under Rule 12(b)(6), the conclusory nature of the complaint, the undisputed lack of diversity jurisdiction, and the vagueness with which plaintiffs assert federal questions have drawn the Court's immediate attention and have alerted it to the need to assess subject-matter jurisdiction. "Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, ___ U.S. ___, 131 S. Ct. 1197,

statute accrued. The Court takes no position on when any limitations periods would have started, partly because it does not know when plaintiffs obtained financing and underwent the allegedly unnecessary services; and partly because the subject-matter jurisdiction issue explained below renders the issue moot.

1202 (2011) (citation omitted); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties . . . . Federal courts are courts of limited jurisdiction."); *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack . . . jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*.") (citation omitted).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

Accordingly, the Court begins by assessing whether plaintiffs have asserted a federal question that would support removal.  "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. 1441(a).[2]  Defendants claim that a federal question exists in this case and have cited 28 U.S.C. § 1331 and its grant to district courts of jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of

_____

[2] In their notice of removal, defendants erroneously cited Section 1441(b) despite the uncontested lack of diversity citizenship and despite citing to 28 U.S.C. § 1331.

7

the United States."  When determining what "arising under" means in any given

context, "the question is, does a state-law claim necessarily raise a stated federal

issue, actually disputed and substantial, which a federal forum may entertain

without disturbing any congressionally approved balance of federal and state

judicial responsibilities."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,

545 U.S. 308, 314 (2005); *accord Gunn v. Minton*, ___ U.S. ___, 133 S. Ct. 1059,

1065 (2013).   "In determining whether the complaint presents a federal question,

the court must examine it in accordance with the well-pleaded complaint rule . . . .

[T]his rule states that federal jurisdiction must be found from what necessarily

appears in the plaintiff's statement of his own claim . . . , unaided by anything

alleged in anticipation of avoidance of defenses which it is thought the defendant

may interpose."  *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815

F.2d 188, 192 (2d Cir. 1987) (second ellipsis in original) (internal quotation marks

and citations omitted); *see also Am. Well Works Co. v. Layne & Bowler Co.*, 241

U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of

action.").   "Under the well-pleaded complaint rule, then, plaintiff is the master of

his complaint and is free to avoid federal jurisdiction by pleading only state claims

even where a federal claim is also available."  *Romano v. Kazacos*, 609 F.3d 512,

518–19 (2d Cir. 2010) (internal quotation marks and citation omitted).  At the

same time, "it is an independent corollary of the well-pleaded complaint rule that

a plaintiff may not defeat removal by omitting to plead necessary federal

questions in a complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983) (citations omitted).  "If the artful pleading rule applies, courts look beyond the face of an 'artfully pled' complaint to determine whether plaintiff has clothed a federal law claim in state garb by pleading state law claims that actually arise under federal law.  If such is the case, the reviewing court will uphold removal even though no federal question appears on the face of the complaint."  *Romano*, 609 F.3d at 519 (internal quotation and editorial marks, and citations, omitted).

Here, the lack of information from plaintiffs about what actually happened and about what statutes defendants allegedly violated weighs against a finding of subject-matter jurisdiction.  The complaint specifies no federal statutes. *Compare, e.g., Campbell v. SmithKline Beecham*, 919 F. Supp. 173, 175–76 (E.D. Pa. 1996) (rejecting general references to "federal laws and regulations" and finding that "[i]t is not clear from plaintiff's complaint that her claims arise under federal law, and this court may not assert jurisdiction simply because defendants infer a federal claim in a not-so-well-pleaded complaint") *with Shea v. Union Free Sch. Dist. of Massapequa*, 682 F. Supp. 2d 239, 241 (E.D.N.Y. 2010) (finding federal question jurisdiction where the complaint at least referenced the Fourteenth Amendment and where "[t]he plaintiffs appear to assert a claim for damages for violations of Courtney's Fourteenth Amendment rights").  The complaint also uses the word "federal" only twice, and together with "New York."

9

*Cf. Isaacs v. Grp. Health, Inc.*, 668 F. Supp. 306, 311 (S.D.N.Y. 1987)

(remanding a case in part because "[t]he only area in the complaint where federal

law is even mentioned is one paragraph in the 'Parties' section").  One use

makes a conclusory reference to hidden costs of financing.  The other use makes

a conclusory reference to a "wrongful enterprise for financial gain," which could

mean a civil RICO action under 18 U.S.C. § 1964 as far as anyone knows.  *See*

18 U.S.C. 1964(c) ("Any person injured in his business or property by reason of a

violation of section 1962 of this chapter may sue therefor in any appropriate

United States district court and shall recover threefold the damages he sustains

and the cost of the suit, including a reasonable attorney's fee . . . .").  Defendants

have guessed that plaintiffs meant to invoke TILA but apparently never served

plaintiffs with any demand for a more particular statement under Rule 12(e) or

with any demands under analogous state rules.  *See, e.g.*, N.Y. CPLR 3013

("Statements in a pleading shall be sufficiently particular to give the court and

parties notice of the transactions, occurrences, or series of transactions or

occurrences, intended to be proved and the material elements of each cause of

action or defense."); CPLR 3016(b) ("Where a cause of action or defense is

based upon misrepresentation, fraud, mistake, wilful default, breach of trust or

undue influence, the circumstances constituting the wrong shall be stated in

detail."); CPLR 3041 ("Any party may require any other party to give a bill of

particulars of such party's claim, or a copy of the items of the account alleged in a

10

pleading."). If defendants could have required plaintiffs to clarify their use of the word "federal" and chose not to do so, then this Court should not have to resort to guesswork to compensate. *Cf. Murphy v. Equifax Info.*, No. 12–CV–6409 (NGG)(VMS), 2013 WL 6562860, at *3 (E.D.N.Y. Dec. 13, 2013) ("While it is possible Plaintiff may have a claim that arises under federal law—perhaps under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.—due to the dearth of facts in the Complaint, the court also cannot discern whether there is a federal question from the face of the pleading.").

Additionally, what little information does appear in the complaint points to a consumer-rights dispute that belongs in state court. The heart of the case is plaintiffs' anger that defendants allegedly duped them into paying for unnecessary dental services. The complaint repeats accusations that defendants conspired to swindle plaintiffs through unnecessary services and then carried out that conspiracy by convincing them to go through with the services. The accusations about the debt financing are not a separate conspiracy involving separate conduct; rather, they seem to be another manifestation or an alternative theory of defendants' supposedly deceptive conduct in recommending unnecessary services. "Where a federal issue is present as only one of multiple theories that could support a particular claim, however, this is insufficient to create federal jurisdiction." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005). Further, the complaint implies that defendants were in a superior

11

position to persuade plaintiffs and that plaintiffs could not have discovered the

alleged fraud until later.  The complaint implies that plaintiffs would not have

consented to the dental services in question if defendants had diagnosed them

more accurately and honestly.  From this view, any suggestion of fraudulent

inducement of financing is incidental to the fraudulent inducement of the services

themselves. *Cf., e.g., Toussie v. Smithtown Bancorp, Inc.*, No. 10–CV–2179

(SLT)(RER), 2011 WL 1155535, at *9 (E.D.N.Y. Mar. 28, 2011) ("Plaintiff claims

only that Defendants engaged in, or aided and abetted, fraud by making material

false statements and engaging in unsound business and accounting practices to

conceal the truth.  Because of the highly regulated nature of the banking industry,

some of the allegedly false statements were made in SEC filings and some of the

unsound practices were uncovered by FDIC examiners.  However, these facts

alone do not give rise to 'logically separate claims' involving technical federal

regulatory issues, but provide alternative theories for proving the fraud claims.

Furthermore, any federal questions arising in connection with these SEC filings

and FDIC examinations are insubstantial and not—as Defendants' claim—the

'central focus of this entire action.'"); *Flynn ex rel. Moody's Corp. v. McDaniel*,

689 F. Supp. 2d 686, 690–91 (S.D.N.Y. 2010)  ("The complaint alleges nothing

but classic state law claims—in relevant part, claims of fraud and a breach of

fiduciary duties owed—which turn on duties and seek to vindicate rights created

by New York law, in essence the right not to be lied to in a fashion that causes

reliance and results in financial injury, a right possessed by all New York residents.") (citation omitted); *Isaacs*, 668 F. Supp. at 312 ("While plaintiffs' breach of contract claims may very well be determined by reference to certain provisions of ERISA, the questions raised will primarily relate to the duties of GHI and MESCO under the contract.").  Put another way, while plaintiffs make a conclusory assertion about disclosure of financing terms, they appear upset about the financing because they are upset about undergoing the services in the first place.  Federal law thus is tangential to the fraud and consumer-rights issues that a state court should adjudicate.

As for defendants' motion to dismiss, the Court declines to address a matter over which it lacks jurisdiction.  Defendants, however, should have the opportunity to pursue dismissal in state court if they wish.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends remanding the case *sua sponte* to New York State Supreme Court, Erie County for lack of subject-matter jurisdiction.  The Court further recommends denying the pending motion to dismiss without prejudice to pursue in state court.

## V.    OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14

days.  *See* 28 U.S.C. § 636(b)(1); FRCP 72.  "As a rule, a party's failure to object

to any purported error or omission in a magistrate judge's report waives further

judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)

(citations omitted).

      SO ORDERED.

                                         ___/s Hugh B. Scott_____
                                         HONORABLE HUGH B. SCOTT
                                       UNITED STATES MAGISTRATE JUDGE

DATED: February 12, 2014